In the Matter of the Estate of GLORIA LAURA MORGAN VANDERBILT, Infant.

Surrogate's Court, New York County, April 19, 1927.

**Guardian and ward — infant — application by guardian for withdrawal from income of infant's estate, sum sufficient to pay premiums on life insurance policies, denied as matter of law — Domestic Relations Law, § 85, Decedent Estate Law, § 111, Banking Law, § 239, limit investments — Surrogate's Court Act, § 194, does not permit allowance for payment of insurance premiums.**

This application to permit the general guardian of an infant to withdraw from income from her estate a sum sufficient to meet premiums on five policies of life insurance, to be issued on the life of the infant's mother, the proceeds to form a trust fund for the benefit of the infant, must be denied, as a matter of law and not of discretion, for under section 85 of the Domestic Relations Law, section 111 of the Decedent Estate Law, and section 239 of the Banking Law, a guardian may only invest the funds of an infant's estate in first mortgages on real estate, with certain limitations, and in bonds which are legal investments

for savings banks. Furthermore, there is no statutory authority for a guardian to invest or the Surrogate's Court to countenance the investment of the funds of a ward in policies of life insurance.

Section 194 of the Surrogate's Court Act does not permit, under the guise of an application for the support of a ward, an allowance for the payment of life insurance premiums. The word " support " comprehends anything requisite to the housing, feeding, clothing, health, proper recreation, vacation, traveling expense, or other proper cognate purposes included within the scope of that word.

APPLICATION by guardian of infant to withdraw from income of her estate a sum sufficient to pay premiums on policies of life insurance.

*Cadwalader, Wickersham & Taft [Thomas B. Gilchrist* of counsel], for the petitioner.

*John G. Saxe,* special guardian.

FOLEY, S. This is an application for an order permitting George W. Wickersham, the general guardian of the infant, to withdraw from the income of the infant's estate the sum of approximately $24,000 annually for the payment of premiums on five policies of insurance. The infant is about three years of age. The insured in these policies is to be Gloria Morgan Vanderbilt, the mother of the infant. Each is to be a twenty-year endowment policy in which the infant is, with certain limitations, the beneficiary. Upon the maturity of each policy either by reason of the death of the insured, or by expiration of the period of twenty years, the proceeds are to constitute a trust for the infant, who is to receive the income during her life, and upon her death the principal sum is to be paid to her surviving issue as she may provide by her last will and testament. If she leave no will disposing of the principal in that manner, payment is to be made to her surviving issue in equal shares, *per stirpes,* and in default of such issue, to her executors or administrators for the benefit of her legatees or next of kin as the case may be. The aggregate amount of insurance is $500,000. It is estimated in the supporting schedule that the income to be derived by the infant, either from the death of the insured or at the 'policies' maturity, will be not less than $23,850 and may reach the sum of $33,000 per year.

In support of the granting of this allowance, the guardian urges (1) that the mother of the infant is desirous of securing protection to her daughter against the possibility of the death of the mother; (2) that the total annual income of the infant's estate is greatly in excess of her needs for her support and education; (3) that, if accumulated, this excess would come into the absolute control of the infant when she attained the age of twenty-one years,

and " that the said infant will thereby be subjected at that immature age to the hazards and dangers of the loss " of her property; and (4) that the policies of life insurance will secure to the infant a guaranteed income during her lifetime, which will be adequate for her maintenance in case of misfortune or the reduction or loss of her entire estate.

The application is denied as a matter of law and not of discretion. I hold that the statutes of this State do not permit the investment of infant's funds in policies of life insurance. In substance and in effect the issuance of these policies and the payment of the premiums would amount to an investment of the infant's funds. Under our statutes a guardian may invest the funds of an infant's estate only in first mortgages on real estate, with certain limitations, and in bonds which are legal investments for savings banks. (Dom. Rel. Law, § 85; Decedent Estate Law, § 111, as amd. by Laws of 1926, chap. 307; Banking Law, § 239.) There is no statutory authority for the guardian to invest, or the surrogate to countenance the investment of the funds of the ward in policies of life insurance.

I hold further that section 194 of the Surrogate's Court Act does not permit, under the guise of an application for the support of a ward, an allowance for the payment of insurance premiums. The word " support " comprehends " anything requisite to the housing, feeding, clothing, health, proper recreation, vacation, traveling expense," or other proper cognate purposes included within the scope of the word. (Jessup-Redfield Surr. [6th ed.] 1494.)

By the established rules of equity, it is not within the power of the surrogate, or even of a judge possessing the widest chancery powers, to permit the impounding of the infant's funds, so as to deprive the infant of her right to absolute enjoyment of her estate at majority. Nor has the Surrogate's Court the power or authority to direct the conversion of the infant's estate or any part thereof from absolute ownership into a trust, the income of which only is made payable to the infant. We cannot set up as against the minor a compulsory judicial trust of her property. Chancellor KENT, in his Commentaries (Vol. 2 [14th ed.], 230), says: " So, Lord ELDON, in *Ware* v. *Polhill*, 11 Ves. 278, and in *Phillips, Ex parte*, 19 Ves. 122, was very guarded in laying down the power of the court in changing infant's property, *so as not to affect the infant's power over it when he comes of age*, or to change its descendible character." (Italics mine.) It should be noted also that in the pending application the devolution of the corpus of the trust derived from the proceeds of the policies may, under certain con-

tingencies, be different from the distribution which would result if the infant died intestate and the funds were retained in absolute form within her estate. Moreover, her testamentary right to dispose of her personal property at the age of eighteen is greatly limited by the proposed insurance contracts. (Decedent Estate Law, § 15.) In *Forman* v. *Marsh* (11 N. Y. 544, 547) it is stated: " The right of the guardian to change the nature of the estate of his ward was acknowledged by the Court of Chancery at an early period, but it was restricted by two qualifications: *First*, that the change should be for the manifest advantage of the infant; and, *second*, that the *right of succession to the property, in case of the death of the infant, should not be changed.* * * * There is also another reason founded upon the common-law right of an infant to dispose of his personal estate, by will, at an earlier age than twenty-one years." (Italics mine). Chief Judge CHURCH, in the opinion of the court in *Horton* v. *McCoy* (47 N. Y. 21, 26) said: " Infants are not regarded capable of managing their property, or of determining whether a change from one kind of property to another is for their interest. The general rule, both in England and this country, has been in dealing with the property of infants, to impress it during minority with its original character, whatever change may have actually occurred. Whether this rule is based upon the old idea of the inviolability of legal titles, or to prevent the injustice to heirs and next of kin, of changing the power of disposition, or to protect the property from conversion by improper influences on the part of either class, it is not important to inquire."

In *Matter of Bolton* (159 N. Y. 129, affg. 37 App. Div. 625, affg. 20 Misc. 532) these general principles applicable to infants' estates were also enunciated, although the main point decided was the lack of power of the Surrogate's Court under former statutes to authorize the conversion of an infant's property from personalty into realty. (See, also, *Matter of Klein,* 80 Misc. 377.)

An additional legal objection presents itself, namely, that it is beyond the power of the guardian to obligate the infant to continue the payment of premiums upon the policies for a period of three years after she will attain her majority.

Certainly the income which the infant will ultimately receive when she attains the age of twenty-one will be larger, if the surplus income is promptly reinvested in legal securities, than it will be if the guardian be permitted to change it into insurance contracts. While the motives of the mother in recommending the adoption of the plan of insurance are unquestionably in the best of faith and designed by her to safeguard the welfare and interests of her

daughter, the absence of statutory authority compels the denial of the application. The advisability of enacting legislation to permit the use of a minor's funds for the procurement of insurance policies rests with the Legislature. The wisdom of confining the investment of infants' funds to a limited class of conservative securities has been based upon sound public policy and long experience. It is unnecessary to discuss here some of the abuses that might arise in permitting an infant's estate to be converted, wholly or partially, into life insurance or into compulsory trusts imposed by judicial decree. Occasional examples, in this and other courts, of the cupidity of persons dealing with infants' estates furnish indications of what may happen to an infant's property if such practices were authorized.

Submit order denying the application accordingly.