Bertram Harnett, J.
Support of stepchildren is óften a family problem. But, sometimes it is a public concern.
TJnder'the Federal public assistance program called Aid to Families with Dependent Children (AFDC), family income is considered in determining a child’s eligibility for relief. All of a-natural father’s income is typically deemed available to his child, but the situation is more complicated where stepfathers are found. The Federal regulations allow consideration of all of the stepfather’s income in estimating the child’s eligibility only if the applicable State law establishes a general obligation on all stepfathers to support their stepchildren, but not where the stepfather is liable to support only a stepchild likely to be a public charge.
In this decision we find, after reconciling a confusing statutory scheme, that in New York there is no general obligation of stepfathers to support their stepchildren, and that these support obligations only occur where the child is otherwise to become a public charge, or under special circumstances of agreement or estoppel. 'Accordingly, the stepfather’s entire income is not automatically figured to the stepchild, but as explained below, .on familiar social services principles, only so much of it as is actually devoted to the cbihjl.
*565 A. FAMILY COMPOSITION AND AGENCY TERMINATION
In July, 1971, Loretta and George Slochowsky were married, each for the second time. Mrs. Slochowsky had two children by her first marriage which was ended by divorce, and because her ex-husband, Mr. Kraemer, failed to support the family, she and the children received AFDC public assistance from the Nassau County Department of Social Services. Mr. Slochowsky has three children by his former marriage, who live with their natural mother, and pays $238 per month to support them, by court order, plus paying medical, dental and life insurance expenses. He has not adopted the two Kraemer stepchildren. Earning a net salary of $190 per week, Mr. Slochowsky and his wife, after his support payments are deducted, are self-sufficient and have not applied for public assistance in their own behalf.
After a protracted delay in the local agency’s termination of assistance to the two stepchildren,[1] in July, 1972, their AFDC assistance was discontinued. The agency budgeted Mr. Sloehow-: sky’s entire income towards the needs of the stepchildren, as well as those attributed to himself and Mrs. Slochowsky, recognized a $165 per month shelter need instead of the $294 mortgage expense actually incurred, and found a budgetary surplus of $68.10.
By fair hearing decision dated September 29, 1972, the State affirmed that determination. In so doing, it specifically relied upon the obligation of stepparents in New York to suppqrt stepchildren “ who are recipients of or in need of public assistance ”, and 18 NYCBB 352.31, which provides that all available income of a spouse, if in the home, shall be applied against the needs of the family. This article 7¿proceeding followed, basically asserting that the State determination, and regulation as applied, is ..contrary to Federal requirements.[2]
B. WHEN ASSUMED STEPPARENT INCOME IS PERMITTED
AFDC in New York is a co-operative venture. Its origin is the Federal Social Security Act (TJ. S. Code, tit. 42, § 601 et seq.) under which millions of dollars in Federal aid are dispensed to New York which in return is required to conform its State plan to Federal requirements.
*566 1. MANDATORY AFDC REQUISITE: “ GENERALLY APPLICABLE ” SUPPORT OBLIGATION
In general, Federal requirements define the class of“ dependent children ” entitled to receive AFDC. That definition is binding upon the States participating in the AFDC program. (King v. Smith, 392 U. S. 309 [1968]; Townsend v. Swank, 404 U. S. 282 [1971]; Lewis v. Martin, 397 U. S. 552 [1970].) The New York State Legislature has specifically stated its intention to conform its State plan to Federal requirements. (L. 1970, ch. 517, § 1; see Young v. Shuart, 67 Misc 2d 689, 695, mod. 39 A D 2d 724.)
Congress has defined a dependent child entitled to AFDC, in pertinent part, as .a: “needy child * * * who has been deprived of parental .support or care by reason of the death, continued absence from the home, or physical or mental incapacity of[1] a parent”. (IT. S. Code, tit. 42, § 606, subd. [a].) Subdivision (a) of .section 233.90 of. title 45 of the Code of Federal Regulations provides in pertinent part: “A State plan * * * must provide that the determination whether a child has been deprived of parental support or care * * * will be made only in relation to * * * the child’s stepparent who is ceremonially married to the child’s natural or adoptive parent and is legally obligated to support the child under State law of general applicability which requires stepparents to support stepchildren to the same extent that natural or adoptwe parents are required to support their children * * * The income only of the parent described [above] will be considered available for children in the household in absence of proof of actual contributions ”.[3] (Emphasis supplied).
In Lewis v. Martin (supra) the .United States Supreme Court upheld the predecessor to this regulation which prohibited assuming income being available from a “ substitute parent”, holding that only stepparents bound to support by State law are included in the term “ parent ”.
2. SUPPORT OBLIGATION APART FROM AFDC DECISIVE
In Sterrett v. Gaither (409 U. S. 809, affg. 346 F. Supp. 1095 [N. D. Ind., 1972]), the Supreme Court affirmed a unanimous three-Judge court ruling which restrained enforcement of Indiana’s public assistance statute that counted nonadoptive step *567 father income towards AFDC as being not a law of “ general applicability ” and hence in conflict with Federal regulations. Indiana’s law required stepparents’ income to be considered available to support a stepchild where, the child would otherwise be eligible for AFDC, (See, also, Bunting v. Juras, 502 P. 2d 607 [Oregon Ct. of App., 1972].)
The United States Department of Health, Education and Welfare (HEW), the Federal agency delegated the responsibility of enforcing the Social Security Act (see, Rosado v. Wyman, 397 U. S. 397, 406-407 [1970]), has precisely interpreted the meaning of a law of “ general applicability ”: “ A duty of general applicability [is one] which [a stepparent] could be compelled by court order to fulfill * * * regardless of whether the children would otherwise receive AFDC payments ’’. (HEW amicus curiae brief, at p. 23, submitted in Lewis v. Martin, 397 U. S. 552, supra.)
c. new York’s stepparent support law
The stepparent support law in New York is statutory in origin. There was no such common-law obligation. (Matter of Kane v. Necci, 245 App. Div. 1, app. dsmd. 269 N. Y. 13.)
1. STATUTES EXPRESSLY APPLICABLE TO “ PUBLIC CHARGE ” STEPCHILDREN
Under New York statutory law, the support liability of a stepparent is imposed only where the stepchild is receiving or ih danger of receiving public assistance. The obligation is set forth principally in section 415 of the Family Court Act, entitled “ Duties to support recipient of public assistance or welfare and patients in institutions in the department of mental hygiene ”, as follows: “ The * * * parent of a recipient of public assistance or care or of a person liable to become in need thereof * * * if of sufficient ability, is responsible for the support of such person * * *. Step-parents shall in like manner be responsible for the support of minor children ”.
This provision is reiterated in substantially identical form in subdivision 1 of section 101 of the Social Services Law. Sections 413 and 414 of the Family Court Act impose a general duty of minor child support upon. the natural mother and father, without regard to the child’s resources, but make no mention of a comparable stepparent support responsibility. The Domestic Relations Law and matrimonial actions arising under it generally rely upon and incorporate the support obligations contained in the Family Court Act and Social Services Law.
*568 2. ARTICLE 3-A DOMESTIC RELATION'S LAW
The State, in arguing that a “ general ” support obligation exists, cites, however, article 3-A of the Domestic Relations Law. It is true that a “ child ” eligible for support for the purpose of article 3-A is defined to include ‘ ‘ a stepchild ’ ’. (Domestic Relations Law, § 31, subd. 3; § 32, subd. 2.)
However, article 3-A does not create a general obligation. Entitled “ Uniform Support of Dependents Law ” (USDL), it is a vehicle for the conduct of essentially an enforcement support proceeding where the petitioner seeking support lives outside the county or State where the respondent obligor resides. Proceedings under article 3-A are maintainable only between residents of different counties, or reciprocating States with similar USDL statutes. (Domestic Relations Law, § 35.) [4] They avoid the inconvenience of the party seeking support having to go to the place where the obligor resides, and allow for a bifurcated hearing, first in one jurisdiction, as to the petitioner’s affirmative proof, then in another jurisdiction as to respondent’s reply. Where a dispute arising under article 3-A requires application of the substantive support law of New York (either between only New York residents or involving New York dependents), and not that of a foreign jurisdiction, the reported eases look to the Family Court Act and Social Services Law for imposition of substantive support obligations. (See Matter of Lenti v. Lenti, 48 Misc 2d 206; Matter of Jones v. Jones, 51 Misc 2d, 610.)
Therefore, article 3-A would have no application to the present support situation in the home courts where both stepfather and stepchildren reside in' Nassau County. Moreover, despite its broad language, it does not rise above the limited application of the article and create an independent obligation apart from the governing substantive support statutes. Were it otherwise the existence of support obligations only referred to in article 3-A, such as the support duty of a grandparent or indeed stepparent aside from the. indigency of their stepchildren, would depend wholly on the accident of residence. (Of. Domestic Relations Law, § 41, subd. 1.) Some dependents without a common *569 county residence with their claimed supporting counterparts would he entitled to support, those with common residence would not. Such a bizarre statutory result is .simply not logical or fair. And, if it were the law in New York, in any event, that would certainly not be a support obligation of “ general applicability ’ ’, under Federal standards, being as it would be, then, fragmented and determined on the basis of intrastate residence. To the extent article 3-A refers to broader .support obligation than contained in the Family Court Act, it must be for purposes of including and accommodating foreign support law, when it is to be applied in New York courts.
3. REPORTED STEPPARENT CASES INVOLVE ONLY AFDC
The courts have uniformly made .stepparent support liability contingent upon the nonadopted stepchild’s status as an actual or potential public charge.
“ Section 125 of the Public "Welfare Law [predecessor to Social Services Law, §101] does not impose an absolute duty on a stepfather to support his minor stepchild. It only requires him to furnish such support if he is of sufficient ability to do so, and the child is or is liable to become a public charge.” (People [¡Complaint of Coleman] v. Fermoile, 236 App. Div. 388, 389, emphasis supplied).
Virtually every reported case where the child’s resources were disclosed specifies that the stepparent liability was invoked only if the infant were so destitute.[5]
The State does not cite, nor has the court been able to find, a single case under contemporary support statutes where a stepparent was required to support a nonindigent stepchild. (See Matter of Du Mond, 196 Misc 14, 16.)
4. STEPPARENT OBLIGATION NOT “ GENERALLY APPLICABLE ”
A general obligation of support imposed upon a natural or adoptive father does not turn on the child’s dependence upon public assistance, and, indeed, exists regardless of the child’s own resources and those of his mother. (Matter of Quat v. Freed, 25 N Y 2d 645; Drazin v. Drazin, 31 A D 2d 531.) Moreover, unlike the stepparent liability, the natural father must sup *570 port Ms child even after the death or divorce of the natural mother. (Family Ct. Act, § 413; cf. Matter of Eckhardt v. Eckhardt, 37 A D 2d 629.)
The provision for support of a child is certainly on a broader basis and has deeper roots than the provision for support of stepchildren.” (Anonymous v. Anonymous, 171 Misc. 644, 647; see Matter of Du Mond, 196 Misc. 14, 16, supra).
The State’s contention that New York’s stepparent support law, acknowledged as limited to 1 ‘ minor children who are the recipients of public assistance” is 1 ‘ commensurate with the obligation imposed upon natural and adoptive parents ” is simply not borne out by the cases. The Federal requirement is not satisfied if only stepchildren receiving public assistance have equal support rights with each other. Bather, all stepchildren must be the beneficiaries of a general obligation of support. And, the prior cases brought in New York where the question of “ general applicability” of stepparent support obligation has been raised 'have not decided it upon the merits. They have merely deferred temporary or summary judgment rulings in favor of trial determinations. (See Cancel v. Wyman, 321 F. Supp. 528 [S. D. N. Y. 1970], app. dsmd. 441 F. 2d 553 [2d Cir., 1971]; Montez v. Wyman, 69 Civ. 4773 [May 5, 1971 S. D. N. Y.].) Accordingly, there has as yet been no decisive ruling on the issue presented here.
We believe that New York’s statutory stepfather support obli-. gation is to be imposed only upon stepfathers of children who are receiving public assistance or in danger of. so doing. It is-not an obligation 6 ‘ generally applicable ’ ’ to all stepchildren.
This is not to say that under appropriate circumstances a stepfather could not be liable to support a nonpublic charging child. There can be specific courses of dealing, marital inducement, expression or implied agreement, equitable estoppel, or fundamental fairness which can, in a given family, result in individual support commitment irrespective of statute. (Cf. Wener v. Wener, 35 A D 2d 50 [2d Dept. 1970].) But, this too is far from a general obligation affecting all stepchildren.
d. stepfather’s entere income not to be automatically DEEMED AVAILABLE TO STEPCHILD
Under the present statutory circumstances, the HEW regulation does not prevent the State in computing potential assistance from taMng into account so much of the stepparent’s income as is actually spent on the cMldren. It merely prohibits the automatic assumption that Ms entire income is available *571 and applied to their support. The apparent reasoning underlying subdivision (a) of section 233.90 of title 45 of the Code of Federal Regulations is that a duty of automatic support only as to welfare stepchildren places upon them an added burden inhibiting remarriage of their natural custodial parent, not equitably imposed upon the rest of society’s stepchildren. To the extent the stepparent’s income is deemed applied towards the dependent stepchildren, it violates the regulation designed to insure equal societal treatment of AFDC children.
Since New York’s stepparent support law is not “generally applicable ”, stepfather Slochowsky’s entire income was improperly applied automatically towards his stepchildren’s needs. It is doubtless properly deemed applied to the wife’s needs, and is, sufficient to meet the needs of, and warrants denial of assistance to Mr. and Mrs. Sloehowsky. But, under governing Federal standards, it is not all to be included automatically in the children’s budgetary computation.
The petition is therefore granted, respondent’s application of 18 NYCRR 352.31 here is declared inconsistent with subdivision (a) of section 233.90 of title 45 of the Code of Federal Regulations, his determination after fair hearing affirming the local agency’s discontinuance of AFDC to petitioner’s children is annulled, retroactive to July 1, 1972, and respondent is enjoined from attributing Mr. Slochowsky’s income towards the needs of his stepchildren, except insofar as it is actually so applied.

. In its initial attempts to discontinue AFDC- assistance, the local agency failed to comply with mandated notice and hearing procedures, and the effective cutoff date was delayed. (See Matter of Slochowsky v. Nassau County Dept. of Social Serv., 70 Misc 2d 669.)

. Although the county is named, in the caption, it was not served and therefore the State is the sole opposing party.

. This regulation grew out of the United States Supreme Court ruling in King v. Smith (392 U. S. 309, supra), invalidating Alabama’s social services rule which assumed the income of the “ man in the house ” towards the support of children that were not his, nor entitled to support from him.

. Section 411 of the Family Court Act provides that: “ The family court has exclusive original jurisdiction over support proceedings under this article and in proceedings under article three-a of the domestic relations law, known as the uniform support of dependents law”. However, there is concurrent Supreme Court matrimonial jurisdiction over both traditional support and intercounty or State USDL proceedings. (Kagen v. Kagen, 21 N Y 2d 532 ; see Swift v. Swift, 65 Misc 2d 1014.)

. See Department of Welfare of City of N. Y. v. Siebel (6 N Y 2d 536, app, dsmd. 361 U. S. 535); Matter of Mercer v. Mercer (26 A D 2d 450); Matter of Eagen v. Robb (72 Misc 2d 364); Matter of Helen S. v. Stanley S. (52 Misc 2d 865); Matter of Rann v. Rann (54 Misc 2d 704); Peake v. Peake (205 Misc. 393); Anonymous v. Anonymous (171 Misc. 644); Jones v. Jones (161 Misc. 660); People ex rel. Deming v. Williams (161 Misc. 573); D. G. v. Hermanez (204 Misc. 650); Anonymous v. Anonymous (176 Misc, 103),